SARAH LAWS *v.* S. A. WOOD, ET AL.

**Deed Procured by Fraud.**

A conveyance to an attorney procured by fraud from his client may be set aside.

**Attorney and Client.**

Where in a suit by a client against her attorney for an accounting and for rents, and to be relieved from a contract and conveyance made to her attorney, induced by his fraud, such client proves facts sufficient to create in the mind of the court a strong suspicion of unfairness, the contract will be set aside or the attorney be decreed to hold in trust for his client, unless he shows clearly that the contract was fairly made and is free from oppression and injustice.

APPEAL FROM LOUISVILLE CHANCERY COURT.

January 4, 1877.

OPINION BY JUDGE COFER:

The appellant, who was plaintiff in the court below, alleged in substance that in April, 1866, she leased of James Guthrie for a period of twenty years, two parcels of ground situated on Breckinridge street in the city of Louisville; that she immediately thereafter erected on the lots houses and other improvements of the value of $1,900; that in October, 1866, she became indebted to Dr. T. J. Griffith in the sum of $250, to secure which she gave him a mortgage on the leased premises and improvements; that she also became indebted to Hughes in the sum of $93, and to Sweeney in the sum of

$67.80, for which they held mechanics' liens on the property; that in October, 1867, Griffith having become the owner of the debts due to Hughes and Sweeney, and his mortgage debt having matured, he was about to commence proceedings to enforce his liens, when the appellee, Wood, agreed with her that he would pay off the debts due to Griffith, and some other small debts which she owed, in consideration of the rents and profits of the leased premises and improvements thereon for a period of three years; that Wood, instead of drawing up a writing embracing the agreement as actually made, fraudulently drew up and induced her to sign and acknowledge an absolute conveyance of said leases and improvements to himself; that she was unable to read the writing and signed and acknowledged it upon his assurance that it contained the contract as agreed upon; that he had failed to pay Griffith's debts and suffered the property to be sold in satisfaction thereof when it was purchased by, the appellee, Bernard, who had notice of Wood's fraud. She also alleged that Wood and Bernard had collected rents on the property to the aggregate amount of $2,200 since the date of her deed to Wood.

She prayed for an account of the rents and of the amounts paid out by the appellees for her, for judgment for the possession of the property, and also for any balance of rents over and above the credits to which they might be entitled. To this the appellee, Wood, answered, denying that any such contract as that set forth in the petition had ever been made; denying all fraud and averring that he purchased the property under the contract embodied in the deed; that the appellant fully understood the deed and signed and acknowledged it after its contents and meaning had been fully explained to her by a person wholly disinterested in the matter at the time, but that he "was not present when the paper was signed by plaintiff nor when its contents were fully explained to her before signing and making and delivering it as a deed."

He also alleged that he knew when he accepted the conveyance that the property would have to be sold to pay Griffith's lien claims, and perhaps some others, and that he would acquire nothing by his purchase except a right to the surplus; that appellant was indebted to him in a large amount for legal services, and that he accepted the conveyance in payment of his fees, and among the fees which he claims were thus paid was one for defending Griffith's suit to foreclose his mortgage, which was commenced on the day the deed was executed. Bernard answered, denying that Wood had been guilty

of any fraud; denying any knowledge of it on his part, if fraud existed, and claiming protection as an innocent purchaser.

The evidence in regard to the terms of the original agreement between the parties, and in regard to the execution of the deed, is in irreconcilable conflict. The appellant swears that the agreement was as she alleges it, while the appellee, Wood, swears it was as it is set forth in the deed. The appellant is sustained by three or four witnesses who swear they heard the agreement made at her house on a Sunday morning just prior to the date of the deed, and that Wood then told the appellant to come to his office during the next week and he would give her a paper for the return of the property when the debts were paid out of the rents. Wood is sustained by the writing actually signed and acknowledged by the appellant, and by the testimony of Bernard, who, though he says he knows nothing of the terms of the original agreement, swears ·that he read and explained the deed to the appellant and Wash Laws, her husband, who is since dead. Wood admitted that he was at appellant's house on the occasion spoken of by her and her witnesses, and he also admitted that the subject of paying the debts out of the rents was discussed on that occasion, but says he and the appellant had been and were then trying to get some one to agree to advance the money to pay the debts and look to the rents for repayment, and that this was the matter discussed on that occasion.

The appellant and her witnesses are ignorant and unacquainted with business transactions, and may have misunderstood, or may fail to remember with accuracy what was said, and if the testimony of the parties and witnesses and the deed was all the evidence in the record we should be disinclined to disturb the writing. But by a careful inspection any analysis of the whole record discloses such a state of facts, in our opinion, as to turn the scale in favor of the appellant.

Wood is an attorney at law and was the legal adviser of the appellant, and had been employed to defend Griffith's suit to enforce his lien on the property in contest. When she became embarrassed by her indebtedness she applied to him for advice and assistance, and according to his testimony disclosed to him her pecuniary troubles. He thus became possessed of facts which enabled him to take advantage of her necessitous condition, and undertook to make a partial defense to Griffith's suit, and to endeavor to find some one who would advance money to pay the debts which were pressing her,

and take charge of the property and rent it and collect the rents until he was repaid.

In this he says he failed, and does not remember the name of but a single person to whom he applied in that behalf. The deed recites that it is made in consideration of $1,000, "paid and to be paid as follows, viz.: two claims of two hundred thirty dollars, including cost of suit to enforce them, which the party of the second part assumes to pay to Thomas J. Griffith, assignee of Abel Hughes, a mechanic, who had a lien for ninety-three dollars ($93), with interest from the 22d day of December, 1866, and to said Griffith, assignee of John Sweeney, a mechanic, who had a lien of sixty-seven dollars and eighty cents ($67.80), with interest from the — day of January, 1867; also the further sum of two hundred fifty dollars ($250) to said Thomas J. Griffith, for which he has the mortgage of the parties of the first part, executed October 22, 1866, due twelve months after date; and the further sum of $135, the debt and supposed cost of a judgment of Lewis Strum against Sarah Laws; the balance is paid in cash and legal services which the party of the second part has rendered 'to the party of the first part, the receipt of which is hereby acknowledged."

· The testimony of Wood shows several of these recitals to be untrue. The two mechanics' liens are stated to be $230 including cost. The two claims then amounted, including interest, to but $170.44, and the suit to foreclose was only commenced on the day the deed was made, and the cost was then at most only a few dollars, making an error in the amount of these items of nearly $60. The deed recites the payment in favor of Strum as if Wood had assumed to pay it, but such is not the fact. He testified that Strum had recovered a judgment against the appellant in a justice's court for $100, and that he agreed to become surety for her in an appeal bond and to prosecute an appeal to the Jefferson Court of Common Pleas, and that the agreement was further that if he should succeed in defeating Strum's claim, he was to pay that much less for the property; that he, and not the appellant, was to be the gainer. The aggregate amount of the debts Wood assumed to pay was $542, and this included the Strum judgment, and $38 of usury which he knew was contained in the Griffith mortgage, and as to which he intended to make defense, and for defending against which it will be presently seen that he charged appellant a fee. He claimed that the appellant owed him $300 for professional services, which, added to the aggregate sum he assumed to pay for her as above, makes a

total of $842, which leaves the sum of $158, which he should have paid in cash to make up the $1,000 which he was to pay for the property; but he swears he did not pay her any cash, although the deed recites that the balance was paid in cash and the appellant is made to acknowledge its receipt.

An examination of his claim for legal services in the light of his testimony and other facts in the record shows a still more glaring piece of injustice, and still greater oppression of the appellant, who was Wood's client and entitled to his protection, against the rapacity of others who should not have been made the victim of his own cupidity. His claim as he presents it is made up of the following items:

> To sundry legal services, advice and counsel......$100.00
> To retainer and for defending a charge of stealing
>    in the circuit court........................... 200.00
>                                  —————
>                                  $300.00

He says in his testimony, "I know that I had rendered her legal services, advice and counsel, on divers occasions, and all these, including the Strum case and the Griffith suit of foreclosure, were lumped together and the charge of $100 was made to cover them, and then she agreed to give me $200 for defending her in the Patsey Hart stealing case, which is the one alluded to in the memorandum."

By the terms of the deed he was to pay all the Griffith debts and the cost of foreclosure, and also the judgment in favor of Strum, and he testifies that if he reduced the amount of Griffith's debt or defeated Strum's claim he was entitled to the benefits of such results, and consequently whatever services he rendered in those cases were for his own benefit; but notwithstanding that fact he charges his client for services thus to be rendered. In other words his client was not only to give him whatever he might gain by litigating with Strum and Griffith, but she was to pay him for the services thus rendered for himself.

If in fact the contract was that in the event he succeeded in defeating Strum's claim he was to have the benefit of his success and to pay that much less for the property, the bargain was so unconscientious as to be unenforcible. To tolerate such oppression of an ignorant woman embarrassed with debt, and harassed with importunate creditors, and that, too, by an officer of the court whose duty it is at all times to aid in the administration of justice, and above all

to deal fairly and honestly with his clients, would bring just reproach upon the tribunals of public justice.

In that part of his testimony just quoted Wood says the appellant "agreed to give me $200 for defending her in the Patsey Hart stealing case." In a former deposition he testified in regard to his services in that case that he assisted General Ward, who was the leading counsel, and that at the rate fees of attorneys were then ranging and usually charged, his services were reasonably worth $150 to $200, but he neither proves nor attempts to prove by his associate counsel or by any one else the value of his services.

The prosecution here referred to, the judgment in favor of Strum and the Griffith suit for foreclosure, were all hanging over the appellant at the time she made the deed. The property cost in 1866 at least $1,900, was insured for $1,400, and the premiums paid for seven years; it was estimated by Wood in his purchase for $1,000, and was worth a rental of from $20 to $30 per month, yet the price which the appellant will receive for it from her attorney at his own estimate of the value of his professional services is only a little more than $700.

The amount of Griffith's mortgage as recited in the deed was reduced enough to pay as much fee as Wood was entitled to for his services in that case. Twenty-five dollars would be a fair fee in the Strum case, and $100 in the prosecution, making an overcharge of at least $175 for professional services, which leaves about $525 as the price actually received by the appellant for the property. Such gross inadequacy of price itself creates a suspicion of unfairness. But when the other facts existing in the record are brought into connection with it, and all are considered together, no doubt can remain of the real character of the transaction. The facts already adverted to not only show an inadequacy of price calculated to arouse grave suspicions, but they show that the consideration to be paid was artfully made to appear much larger than it really was, and the balance of about $158, which according to Wood's own estimates ought to have been paid in cash, was not paid.

Nor are these all the facts which tend to fix upon the mind the conviction that the deed was improperly obtained. In his answer as already quoted Wood says he was not present when the paper was signed by the appellant, nor when its contents were explained to her before signing and acknowledging it, but that its contents and meaning were fully explained to her "by a person wholly disinterested in the matter at the time." Who that person was he does not say,

nor does he say whether that person is still "wholly disinterested in the matter" or not, but in his deposition speaking of the execution of the deed he says, "It was done by the plaintiff, after a full and complete explanation to her of its meaning and purport. I had fully explained to her and Wash and to Mrs. Scott, for they all came together to my office, that she conveyed to me her entire interest in the leasehold property, and she so understood it before, at the time, and after she signed the deed. I had prepared the deed before they came in accordance with our previous agreement. I read it to them in the presence of plaintiff, Wash, and Mrs. Scott, and they all agreed to it and said in substance that it was all right. I then asked Mr. S. M. Bernard (appellee) to go with them to the clerk's office and have them to sign and acknowledge it. Mr. Bernard took the paper, I think, and went off with them, and after being gone a while plaintiff and Wash came back to me and wanted me to agree outside, that is verbally agree, that if they should get or raise the money and pay off the debts before the property was sold that I would let them have it back again. But I told them emphatically that I would make no such agreement."

It thus appears that Wood is not only contradicted by the testimony of the appellant and her witnesses, but there is one irreconcilable conflict between his answer and his testimony both sworn to, upon the most vital question in the case. So anxious have courts always been not only to preserve the purity and good name of the bar, but to do justice to suitors of all degrees, and especially to protect the ignorant and the unwary against fraud and oppression, that they have treated the relation of attorney and client much as they have those of guardian and ward, and trustee and cestui que trust.

The relation of attorney and client is one of especial confidence and influence, and while that relation continues it has been said, "The attorney is prohibited from contracting with his client for an interest in the subject-matter of the litigation." *Hall v. Hallett,* 1 Cox Ch. 134; *West v. Raymond,* 21 Ind. 305. The client (and especially when beset by civil suits and with a criminal prosecution, as was the case with the appellant when she made the deed to Wood) is so completely in the hands of the attorney that it is almost impossible to enter into a free and fair contract in regard to the subject-matter of the litigation. While the rule may not, as was strongly intimated by Lord Erskine in *Wright v. Proud,* 13 Vesey, Jr., 138, go to the extent of absolutely prohibiting such contracts, it has been

repeatedly decided that the burden in all such cases is on the attorney to vindicate the transaction from all suspicion of unfairness or apprehension. *Howell v. Ransom,* 11 Paige (N. Y.) 538; *Barry v. Whitney,* 3 Sand. (N. Y.) 696; *Mott v. Harrington,* 12 Vt. 199; *Brock v. Barnes, Ex'r,* 40 Barb. (N. Y.) 521.

There is nothing in the facts of this case which renders it necessary that we should now decide whether a purchase by the attorney from the client of the subject-matter of the litigation would under all circumstances be set aside or treated as a trust for the benefit of the client, unless the transaction should be shown by affirmative evidence to have been in all respects free from imposition, undue influence or fraud. There are many decisions by courts highly respected for their learning and wisdom which hold this doctrine, and we incline to the opinion that it is supported by the preponderance of both American and English authorities.

But we decide without hesitation that where the client first shows enough to create in the mind of the court a strong suspicion of unfairness, the contract ought unhesitatingly to be set aside or the attorney be decreed to hold in trust unless he shows clearly that it was fairly made and is free from oppression and injustice.

The evidence of the appellant is at least sufficient to create grave suspicion that she had been overreached and defrauded. This devolved upon the purchaser the duty of showing that the contract was freely and understandingly made, and was unaffected by fraud or imposition. Wood has not only failed to do this, but his own testimony shows with perfect clearness what on the appellant's proof was to some extent, at least, matter of doubt. We have no doubt but as between the appellant and Wood a case is made out which demands relief at the hands of the chancellor.

Having reached the conclusion that so far as Wood is concerned, the appellant is entitled to relief, it only remains to decide whether she is also entitled to relief as to the appellee, Bernard. The evidence does not warrant the conclusion that Bernard participated in Wood's fraud, or that he had actual notice of it, though we incline to the opinion that he had such knowledge of facts as ought to have put him upon inquiry which would have led to a discovery of the real nature of the transaction.

But Griffith had a mortgage and held two debts which were secured by mechanic's liens on the property, and he had undoubted right to have the property, or so much of it as was necessary to satisfy his debts, sold, and that involved the right on the part of

any third person who became the highest and best bidder, to purchase, although he might have had actual knowledge of Wood's fraud in obtaining the deed from the appellant, for otherwise all the appellant had to do was to attend when the property was offered for sale and make known to bidders the fraud of which she now complains and thereby affect every bidder with notice and prevent a sale being made.

The property sold for considerably more than was necessary to satisfy Griffith's judgment, and to that extent Bernard may be said to hold under Wood, for it is fair to presume that but for Wood's deed the court would only have decreed the sale of so much of the property as would satisfy Griffith's claims, or if on account of the indivisibility of the property the whole had been sold the surplus would have been secured to the appellant. Sec. 812, Civ. Code.

But whatever may have been the reason why the whole property was sold, the sale was reported and confirmed, and the title of the purchaser cannot be affected by the fact that more property was sold than was necessary to satisfy the lien debts. *Dawson v. Litsey,* 10 Bush 408. We are therefore of the opinion that Bernard acquired a valid title to the property, and that there is no legal or equitable ground upon which the appellant can be relieved as against him.

Wood is, however, liable to her for rent of the property at its fair value from the date of his deed to the date of Bernard's purchase, and one thousand dollars, the amount at which the property was estimated in the deed from the appellant to him, subject to credits for the amounts of the debts due to Griffith, and interest thereon to the date of the deed, and the legal cost of Griffith's suit, and the fair value of Wood's services rendered to the appellant as an attorney-at-law, and also for any taxes or ground rent paid by him, and for the fair rental value of such portions of the property as the appellant occupied between the date of the deed and Bernard's purchase. Upon any balance found to be due, the appellant will be entitled to interest from the date of the deed to Wood.

Judgment *affirmed* as to Bernard and reversed as to Wood, and cause remanded for further proceedings.

*J. S. Jackman, for appellant.*

*L. A. Wood, A. Duvall, for appellees.*